UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Tanisha Williams,

        Plaintiff,                      Case Number: 25-10980
                                              Honorable Denise Page Hood

v.

Jeremy Bush, et al.,

        Defendants.
_____/

**OPINION AND ORDER OF PARTIAL DISMISSAL
and DENYING MOTION TO APPOINT COUNSEL**

      Michigan prisoner Tanisha Williams, currently confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, has filed a *pro se* complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. (ECF No. 1.) She sues the following Michigan Department of Corrections ("MDOC") employees: Deputy Director Jeremy Bush, Special Activities Coordinator Adrian Drischell, Chaplain Tellas, MDOC Director Heidi Washington, Warden Jeremy Howard, and Grievance Coordinators Boa and Hermanson.

      Having reviewed the Complaint, and for the reasons explained below, the Court dismisses Williams' claims against Defendants Washington, Howard, and Bush. The Court also dismisses Williams' claims for money damages under

RLUIPA. Further, the Court will dismiss Williams' claims under § 1983 against Defendants Boa and Hermanson.

## I. STANDARDS OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court must screen for colorable merit every prisoner complaint filed against a state or governmental entity, and is required to dismiss those prisoner actions in which the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e), 1915A(b); 42 U.S.C. § 1997e(c)). The screening requirement extends to all prisoner civil cases, whether fee-paid or *in forma pauperis*, "as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). A complaint is frivolous if it lacks an arguable basis in law or fact and may be dismissed if it is "based on legal theories that are indisputably meritless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing Neitzke v. Williams, 490 U.S. 319, 325, 327-28 (1989)); *see also Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000). A *pro se* civil-rights complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"

2

as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). This rule gives "the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). The notice-pleading standard requires more than the bare assertion of legal conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he or she was intentionally deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-157 (1978); *Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020).

## II. FACTUAL ALLEGATIONS

Williams states that as a member of the Nation of Islam she should be provided a religious diet but has not consistently been provided a nutritionally sufficient religious diet. Williams declared her religion on September 10, 2023. (ECF No. 1, PageID.8.) After doing so, she realized the menu offered by the MDOC did not comply with the rules of her religion. (*Id.*)

In July 2023, Williams filed a request with Defendant Chaplain Tellas to be approved for a religious diet. (*Id.* at PageID.10.) On August 11, 2023, Chaplain Tellas conducted a religious diet interview. (*Id.*) She informed Williams that she had to request a change of her declared religion to be eligible for a religious diet. (*Id.*) Chaplain Tellas then suspended the interview because she "had no NOI members requesting religious diet or services so she needed insight into the steps to take." (*Id.*) On August 11, 2023, Williams submitted a declaration of religion kite to Chaplain Tellas. (*Id.*)

In August 2023, Williams wrote to Defendant Special Activities Coordinator Adrian Drischell to inform him about her religious diet accommodation request. (*Id.*) On August 31, 2023, Chaplain Tellas resumed the religious diet interview with Williams. (*Id.*)

In September 2023, Williams submitted a request to the prison's Prisoner Benefit Fund for $ 3,500.00 every six months for materials for Nation of Islam services and holy day observances. (*Id.* at PageID.11.) The Prisoner Benefit Fund declined the request because the Fund already provided $10,000 for religious groups and Williams could request a portion of that disbursement from Chaplain Tellas. (*Id.* at PageID.10, 38.)

On November 2, 2023, Williams received an email denying her request for an alternative meal plan. (*Id.* at PageID.12.) The email did not provide a reason for the denial. (*Id.*)

In January 2024, Williams consulted a health care provider about a rash covering her entire body. (*Id.*) The provider discovered that Williams had lost 10-12 pounds since November and that her B12 and iron levels were extremely low. (*Id.*) Williams concluded that her poor health was caused by nutritionally insufficient food intake. (*Id.*) After being denied a religious meal accommodation, Williams had attempted to independently comply with Nation of Islam teachings regarding acceptable meals. (*Id.*) This, she claims, led to the nutritional deficits. She feels compelled to eat food that does not comply with the tenets of her religion to restore her health.

In addition to requesting meal accommodations, Williams states that from September 2023 through May 2024, she submitted multiple requests for books and other materials necessary for religious services. (*Id.* at PageID.10-13.) She claims that Defendant Tellas repeatedly failed to satisfy her requests but satisfied similar requests from other religious groups. (*Id.*)

Williams names all Defendants in their personal and official capacities. She seeks prospective injunctive and monetary relief. Williams also seeks appointed counsel.

### III.  DISCUSSION

A.  Claims for Money Damages Under RLUIPA

RLUIPA prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a "compelling governmental interest" and does so in the "least restrictive" way. 42 U.S.C. § 2000cc–1(a). The statute permits the recovery of "appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). "RLUIPA does not authorize damages against officials sued in their official capacity, *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), or their individual capacity, *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014)." *Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025).  Therefore, the Court will dismiss Williams' claims for money damages under RLUIPA.

B.  Defendants Washington, Howard and Bush

Williams' § 1983 claims against MDOC Director Washington, Warden Howard, and Deputy Director Jeremy Bush must be dismissed because she fails to allege any facts to show their personal involvement in the improper conduct alleged in the complaint. *See Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978) (holding that Section 1983 liability cannot be based upon a theory of *respondeat superior* or vicarious liability); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through

6

the official's own individual actions, has violated the Constitution."). To establish a supervisory official's liability under § 1983, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)). Because Williams does not allege that these Defendants were personally involved in, or responsible for, the alleged violations of her federal rights, they will be dismissed.

In addition, Williams fails to state a claim against these Defendants under RLUIPA. She must show that a "governmental entity," 42 U.S.C. § 2000cc-5(4)(A)(i), imposed "a substantial burden on" her religious exercise, *id*. § 2000cc-1(a). She has not identified actions by these Defendants or a specific policy that does so. *See Ali v. Adamson*, 132 F.4th 924, 935 (6th Cir. 2025) (affirming dismissal of RLUIPA claims against MDOC because plaintiff did not identify a specific policy that violates RLUIPA). *See also Yaacov v. Mohr*, No. 1:16CV2171, 2022 WL 556734, at *4 (N.D. Ohio Feb. 24, 2022) ("[T]o establish liability under RLUIPA (as under Section 1983), a plaintiff must prove, among other things, the personal involvement of each defendant in the alleged violation."); *Vann v. Fischer*, No. 11 CIV. 1958 JPO, 2012 WL 2384428, at *5 (S.D.N.Y. June 21, 2012) ("Personal involvement is … a prerequisite to a defendant's liability under RLUIPA.").

7

Therefore, the Court will dismiss Defendants Washington, Howard, and Bush.

C. § 1983 Claims Against Defendants Boa and Hermanson

Williams' claims against Grievance Coordinators Boa and Hermanson under § 1983 are based upon grievance responses. The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. A prisoner has a First Amendment right to file grievances against prison officials, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances. *See Smith v. Arkansas State Highway Employees*, *Local 1315*, 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.").

A prisoner also does not have a constitutionally protected interest in an inmate grievance procedure or the right to an effective procedure. *See e.g., Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing cases). Thus, Williams' claim that Boa and Hermanson failed to properly or adequately respond to her grievances fails to state a claim on which relief may be granted. See *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (holding that a

8

defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983").  The Court will dismiss Williams' claims under § 1983 against Defendants Boa and Hermanson.

        D.       Motion to Appoint Counsel

Williams filed a Motion to Appoint Counsel, which is denied without prejudice at this time.  There is no right to counsel in prisoner civil rights cases. Bennett v. Smith, 110 F. App'x 633, 635 (6th Cir. 2004) (citing, *Glover v. Johnson,* 75 F.3d 264, 268 (6th Cir.1996)). The appointment of counsel in a civil proceeding is justified only by exceptional circumstances. *Lavado v. Keohane,* 992 F.2d 601, 604–06 (6th Cir.1993).  There is no exceptional circumstance present in this case at this time.  The remaining Defendants have yet to be served in this case and so the remaining issues and facts currently before the Court do not show that exceptional circumstances exist at this time.

## IV. CONCLUSION

For the reasons explained above, the Court concludes that Williams fails to state a claim upon which relief may be granted as to her claims against Defendants

9

Washington, Howard, and Bush. **Defendants Heidi Washington, Jeramy Howard and Jeremy Bush are DISMISSED from this action.**

The Court further concludes that Williams may not seek money damages under RLUIPA, and those claims are DISMISSED. Further, Williams fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983 against Defendants Boa and Hermanson and the § 1983 claims against those Defendants are DISMISSED.

As to Plaintiff's Motion to Appoint Counsel **(ECF No. 5),** it is **DENIED** without prejudice.

The Court will now refer this matter to the *Pro Se* Prisoner Early Mediation Program.

**SO ORDERED**.

                                                          s/Denise Page Hood
                                                          DENISE PAGE HOOD
                                                          UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2025